Earl Nelson ARNOLD, et al.,
Plaintiffs-Appellants,

v.

Tommy L. HAYSLETT, Jr., et al.,
Defendants-Appellees.

Supreme Court of Tennessee,
At Jackson.

Aug. 22, 1983.

James V. Ball, Michael S. Long, Memphis, for plaintiffs-appellants.

Richard Glassman, Memphis, for Hayslett, Letcher & City of Memphis Bd. of Educ.

Max D. Lucas, Jr., Memphis, for R.W. Harmon & Sons, Inc.; Lucas & Leach, Memphis, of counsel.

Eugene C. Gaerig, Asst. City Atty., Memphis, for City of Memphis.

## OPINION

HARBISON, Justice.

This is an action for the wrongful death of a twelve-year-old junior high school stu-

dent who was fatally injured while riding as a passenger in a school bus. The vehicle was owned by the Board of Education, Memphis City Schools, and was being operated by its employee Tommy L. Hayslett, Jr., at the time of the accident on February 10, 1977. The child, Michael Channing Arnold, was a seventh grade student at Humes Junior High School in Memphis. In nine more days he would have reached his thirteenth birthday. He was fatally injured when he leaned out of the window of the rear seat on the right-hand side of the bus to speak to another student. As the bus moved forward, his head and neck came into contact with a guy wire supporting a utility pole, and he was killed almost instantly.

The trial judge found that the operator of the bus and James Letcher, a teacher at the school who was an assistant monitor, were negligent in the operation and management of the school bus. He also found that the child was capable of contributory negligence and that he was partially responsible for his injuries. The trial judge found the decedent to be guilty of "remote contributory negligence" and awarded a mitigated recovery to his next-of-kin in the amount of $40,000.

The Court of Appeals concurred in the factual findings of the trial judge, including the capability of the minor and his fault in causing or contributing to the accident. The Court of Appeals found, however, that the actions of the minor constituted proximate, rather than remote, contributory negligence, precluding recovery.[1]

We are bound by the concurrent findings of the trial court and Court of Appeals that the driver, Hayslett, was negligent in operating the bus, although we are constrained to state that those findings were very general, indefinite and unclear. The amended complaint upon which this case was tried

charged the bus driver and other school personnel with eighteen separate acts of common-law negligence, violation of twelve separate city ordinances and five statutory violations. Neither court below responded to any of these allegations. After a lengthy trial the case was taken under advisement. Later the trial judge gave a short oral opinion. With respect to negligence of the school bus operator and other school personnel he merely made this statement:

"In evaluating all of the evidence in this case the Court has to find that the Board through its agents, servants, and employees was guilty of negligence which directly and proximately contributed to this accident and the resulting death of the young Mr. Arnold."

The order of judgment entered in the case stated:

"3. The Court further finds that the Defendant, The City of Memphis Board of Education, and its agents, servants or employees, Tommy L. Hayslett, Jr., and James Letcher, were guilty of proximate negligence in the backing of the school bus and that the Plaintiffs are entitled to recover damages in the amount of FORTY THOUSAND ($40,000.00) DOLLARS and costs."

The Court of Appeals treated the matter with equal brevity. It said:

"Before even considering contributory negligence on the part of plaintiff, either as proximate or remote, it must first be conceded that defendant is negligent. Otherwise there is no need to consider it as there can be no recovery unless the defendant has committed a negligent act. For the purposes of this opinion we consider one, some or all of the acts of the judgment defendants to have been negligently done."

More detailed analysis of the evidence and more specific findings of fact by the

---

1. There were other issues involving other parties in the courts below. Settlements were made with some of the original defendants, and issues as to others were pretermitted by the

Court of Appeals. We have limited our consideration to the issues of negligence and contributory fault.

courts below would have been very helpful to this Court. Our role in reviewing cases is materially affected by whether there is or is not a concurrent finding of fact by the trial judge and the Court of Appeals in non-jury cases. T.C.A. § 27–1–113. It is important to the workload of this court that trial judges and the Court of Appeals dispose of factual issues in specific terms.

Whether the bus driver was negligent in this case or not was, to say the least, a close question. He backed the school bus a short distance in order to clear a bus parked in front of him. He did this at the direction of two school monitors, the senior monitor being James L. McKenzie and the assistant James N. Letcher, Jr. McKenzie died before the trial. Both he and Letcher, however, testified by depositions which were made part of the record. McKenzie gave the primary directions to the bus driver to back the vehicle. He was standing on the sidewalk, near the center of the bus, on the right side, from which the minor leaned out of the window. McKenzie had warned other students to keep their heads and arms inside the bus while it was in motion. He had just finished telling a young girl, Maria Barker, for the second time to get her hands inside the bus when he gave the signal for the driver to commence backing. He testified that after the driver had backed sufficiently to clear the bus in front of him, he McKenzie, gave the signal for the bus to go forward. At that instant, just as the bus began to move forward,[2] young Arnold leaned out of the window and his head struck the guy wire which was in very close proximity. The bus itself, according to all the witnesses, did not strike either the guy wire or the utility pole.

We can find no evidence to support the conclusion of the trial judge that Letcher was guilty of negligence. Mr. Letcher was standing in the middle of Manassas Street, to the rear and on the left side of the bus, stopping traffic so that the bus could pull out of the loading zone. He could not see the right-hand side of the bus from where he was standing, nor did he have any knowledge or indication that young Arnold, or any other student, was leaning out of the right side of the bus near the guy wire, when the bus began moving forward. The basis upon which either court below found him guilty of proximate negligence is difficult to understand. Mr. McKenzie was not found guilty of negligence, although he was joined as a party defendant.

Faced with the very general findings of the courts below, we are constrained to hold that there is no material evidence in the record upon which to base a judgment against the City of Memphis for the actions of James N. Letcher, Jr. The suit was dismissed as to McKenzie, the monitor in charge, and no serious argument has been made on appeal that liability should be predicated upon his actions. He died before the trial, and no effort was made to revive the suit against him.

With respect to Hayslett, the record does contain evidence from which a trier of fact could conclude that there was negligence, although it is unclear in what respect the courts below reached their conclusions.[3] All of the witnesses testified that he began backing the bus at the direction of the monitors, that the monitors had warned the children to keep their bodies inside the bus

---

2. McKenzie testified:

"And before the bus got ready to move off the last time, I spoke to this young lady again to move out of the window and she was my last and I was telling everybody else, which they could hear me, and after telling her, I looked backwards and forwards of the bus, then I gave him the signal to move and when I looked back again, this child, his head was coming out the window."

3. In their briefs all counsel agree that in the transportation of students the school system is not a common carrier and is held only to ordinary reasonable care under the circumstances. *Hawkins County v. Davis,* 216 Tenn. 262, 391 S.W.2d 658 (1965). The age and capacity of children being transported is an important factor in measuring the conduct of a school bus driver. *Cartwright v. Graves,* 182 Tenn. 114, 184 S.W.2d 373 (1944).

and that the accident happened within a very short interval of time, probably a matter of a few seconds at most.

▌ Nevertheless, since the trial court found negligence and the Court of Appeals "considered" it established for the purpose of its discussion, it seems probable that there is a concurrent finding on the point so as to bind this Court to a very narrow scope of review on that issue. We request that this procedure not be followed in the future by trial judges or by the Court of Appeals, especially in governmental tort claims. Essentially the findings of negligence by the trial court remain unreviewed, or at least they have had no effective review, and a contrary finding by the Court of Appeals might well be dispositive of the whole case. For practical purposes, the Court of Appeals virtually pretermitted the issue of negligence. The scope of review in a nonjury case in that court is quite broad, whereas the issue has almost been foreclosed in this Court by an "assumption" which may or may not be accurate.

Nevertheless, accepting the conclusion that the school bus driver may have been negligent, we find that the preponderance of the evidence supports the conclusion of the Court of Appeals that the conduct of the decedent does not fit within the concept of remote contributory negligence.

▌ This is a somewhat unusual principle developed by the Tennessee courts, originally stemming from the interpretation of certain railroad precautionary statutes, but thereafter finding its way into the general law of negligence. It is separate and apart from the doctrine of last clear chance. Both rules are accepted in this state as exceptions to the common-law principle that contributory fault is a complete bar to recovery. For a recent analysis of both rules see *Street v. Calvert,* 541 S.W.2d 576 (Tenn.1976). Under the last clear chance doctrine contributory fault of a claimant does not either bar or mitigate recovery, whereas under the remote contributory negligence rule mitigation is required. A detailed discussion of the development of these two principles is contained in J.W. Wade, W.K. Crawford, Jr., and J.L. Ryder, *Comparative Fault in Tennessee Tort Actions: Past, Present and Future,* 41 *Tenn.L. Rev.* 423 (1974).[4]

▌ In the present case the Court of Appeals disagreed with a definition of "remote contributory negligence" by the Eastern Section in *Cardwell v. Golden,* 621 S.W.2d 774 (Tenn.App.E.S., 1981). The statement appearing there, however, was no more than a summary of the rule made in considering whether the trial judge erred in omitting it from his jury instructions. Neither the Eastern Section of the Court of Appeals in that case nor the Western Section in the present case referred to the definition approved by this Court in *Street v. Calvert,* 541 S.W.2d 576, 585 (Tenn.1976), as follows:

> "We define it as that negligence which is too far removed as to time or place, or causative force, to be a direct or proximate cause of the accident. We suggest that an appropriate charge would state the foregoing definition and add: 'If you find the plaintiff guilty of such remote contributory negligence, you must reduce the recovery which you would otherwise award, in proportion to plaintiff's contribution to the injury.'"

4. This article was written several years before the decision in *Street v. Calvert, supra.* In it the authors advocated the adoption in Tennessee of a system of comparative negligence such as exists in several other jurisdictions. While the authors asserted that the adoption of such a system could be achieved by court action, it was recognized that for all practical purposes in Tennessee legislative participation would be needed because of the language of the present Tennessee Contribution Among Tort-feasors Act, T.C.A. §§ 29–11–101 to –106. In particular T.C.A. § 29–11–103 prohibits the consideration of the "relative degrees of fault" in determining pro rata shares of tortfeasors in cases involving multiple parties. Without some amendment to this statute an effective system of "comparative negligence" would be difficult to implement as a matter of common law.

We continue to approve that definition and urge its consideration by the various sections of the Court of Appeals.

Applying that definition to the present case, we are of the opinion that the fault of the decedent, concurrently found by both courts, was not removed as to time, place or causative force from being a direct and proximate cause of the accident.

As pointed out by the Court of Appeals, there were some discrepancies among the various witnesses who testified, but all of them, in essence, agreed that the decedent leaned out of the bus window a very short time before the bus started forward. At that point the bus had backed from its previous position and the rear was very close to the guy wire. There is a conflict among the witnesses as to whether the bus driver did or did not back upon the low curb adjacent to the street. The guy wire was only twelve inches from the edge of that curb, so that a student leaning out of a window would have been very close to the guy wire whether the rear wheels did or did not actually mount upon the curb itself.[5]

There is uncontradicted testimony in the record that the decedent was a bright, alert and intelligent young man. His father testified that the boy understood instructions, and there is no question but that the monitors repeatedly instructed students, practically every day, not to have their hands or other parts of their bodies outside the bus windows when the bus was in motion. As stated previously, Mr. McKenzie had just instructed the students to that effect on the occasion in question and had twice warned a young girl sitting a few seats in front of the decedent. The decedent had originally been seated on the aisle, or inside, rear seat of the bus. His seat-mate, Vernon Barker, testified that young Arnold asked him to change places and that Arnold literally crawled over Barker in order to get to the window.

The bus windows did not lift from the bottom; they only lowered from the top a distance of nine inches. The lower twelve-inch portion of the windows was stationary. The afternoon in question was warm, and many of the passengers had lowered their windows. Apparently the decedent saw another student standing near the rear of the bus, on the sidewalk, and he undertook to speak or shout to him. Decedent crawled upon the bus seat on his knees, placed his hands on the metal edge of the lowered window, and leaned outside. Barker testified that this occurred just as the bus began moving forward.[6] Almost instantly his head struck the guy wire. Mr. McKenzie testified to the same effect, and immediately shouted to the bus driver to stop. The bus could not have moved more than a few feet forward, because after the accident the rear of the bus was still just south of the guy wire. The utility pole was nineteen feet south of the guy wire; the bus was going south, and the rear was still between the guy wire and the post when the bus stopped.

■ As pointed out in *Street v. Calvert, supra,* and in the law review article above referred to, the doctrine of "remote contributory negligence" has to do with causation, rather than with a comparison of the relative degrees of fault among the litigating parties.

■ The trial judge recognized that because of the age of the minor, a question existed as to whether he was old enough to be capable of contributory fault. He re-

---

5. The body of the bus extended eleven feet beyond the rear axle. If the side of the bus was about twelve inches from the wire when parallel with the curb, obviously the rear would swing within a few inches of the wire in a turn to the left, whether the rear wheels went upon the curb or not. The bus was eight feet wide and 34.4 feet in length.

6. He testified:
   "A. It was moving forward when he put his head out the window.
   "Q. Was the bus moving when he put his head out the window?
   "A. I'm pretty sure it was. It was moving or just starting to move."

solved that factual issue against the decedent, based upon material and, indeed, uncontroverted evidence. The Court of Appeals affirmed and the issue is therefore foreclosed here.

■ The trial judge further recognized that the fault of minors is to be judged by a standard somewhat different from that applicable to adults, and that the age, experience, training, education and maturity of the child must be taken into account. The conduct of the child is to be judged according to the conduct of other persons who are his peers. Applying that standard, however, the trial judge still found that the minor was guilty of causative negligence. The Court of Appeals affirmed. Again, that issue, being supported by material evidence, is foreclosed here.

■ The only remaining question, therefore, is whether the conduct of the decedent can factually be said to be so removed by time, place or causative force as not to be a direct and proximate cause of his injuries. The great preponderance of the evidence supports the conclusion of the Court of Appeals that his negligence was proximate rather than remote.

As pointed out previously, this is not a jury case, nor was the scope of review in the Court of Appeals limited to the standard of material evidence in reviewing a general jury verdict. The trial judge did not explain his reasoning in concluding that the conduct of the child was "remote" or point to any facts which rendered it such. Again, his findings were quite general, and there was no analysis of the evidence either in his oral opinion or in the order of judgment.

■ In this Court appellants invoke the last clear chance principle in an effort to have the judgment of the trial court reinstated. The trial judge did not base his judgment on that rule of law. He applied the rule of remote negligence and mitigated the award. Neither court below with fact-finding jurisdiction mentioned the rules governing last clear chance, nor does the evidence warrant a finding that Hayslett was "the last wrongdoer with a reasonable opportunity to avoid the harm." *Street v. Calvert,* 541 S.W.2d 576, 583 (Tenn.1976).

The judgment of the Court of Appeals is affirmed at the cost of appellants.

FONES, C.J., and COOPER, BROCK and DROWOTA, JJ., concur.