**James MANSFIELD as Administrator of the Estate of Craig Mansfield, Deceased, Plaintiff/Appellant,**

v.

**COLONIAL FREIGHT SYSTEMS, Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 12, 1993.

Rehearing Denied June 4, 1993.

Permission to Appeal Denied by Supreme Court Sept. 7, 1993.

528

Floyd S. Flippin, Adams, Ryal & Flippin, Humboldt, for plaintiff/appellant.

Richard L. Hollow, John C. Duffy, Watson, Hollow & Reeves, Knoxville, for defendant/appellee.

## OPINION

KOCH, Judge.

This appeal involves the alcohol-related death of a passenger who was riding in a vehicle that slammed headlong into the rear of a tractor trailer parked on the shoulder of an interstate highway. The passenger's estate filed suit in the Circuit Court for Davidson County against various parties, including the freight company that owned the tractor trailer. The trial court determined that the freight company was entitled to a summary judgment because its driver's conduct was not the proximate cause of the accident. The passenger's estate asserts on this appeal that the freight company was not entitled to a judgment as a matter of law. We disagree and, therefore, affirm the trial court.

### I.

Craig Mansfield, a 28–year–old construction laborer from Illinois, moved to Kingston Springs in August or September 1989 when his employer, Paul Clute & Associates, Inc., obtained the contract to construct The Golf Club of Tennessee. He lived in a house trailer on the golf club property with Brett Steele, his 20–year–old cousin, who also worked for Paul Clute & Associates.

Work on the golf course was called off on November 28, 1989 because the ground was too wet. With nothing to do, Mr. Mansfield, Mr. Steele, and other members of the crew decided to have a cookout. They spent most of the morning drinking beer and roasting a deer given to them by a neighbor. Both Mr. Mansfield and Mr. Steele consumed beer during the cookout.

Later in the afternoon, the group decided to have an impromptu bachelor party for one of their number who was about to be married. The men left their cookout sometime between 3:30 and 5:00 p.m. and drove to an exotic dance club in downtown Nashville called the Classic Cat Lounge. Even though the club did not serve alcoholic beverages, the men continued to drink into the early evening from a bottle of bourbon they had brought along.

Mr. Mansfield decided to return to his trailer in Kingston Springs because he was feeling ill. He borrowed Freddie Summerford's Chevrolet Blazer and left the Classic Cat with Mr. Steele. He permitted Mr. Steele to drive the Blazer back to Kingston Springs even though, like the others in the group, Mr. Steele had been drinking during the day.

At approximately 7:00 p.m., Mr. Steele sped westbound on I–40 and crashed headlong into the rear of a tractor trailer parked on the right shoulder of the interstate. The accident scene was near the Charlotte Avenue exit, a short distance from the place where the interstate narrows from three to two lanes. The tractor trailer was in the emergency lane seven to eight feet away from the travelled portion of the highway. Mr. Steele apparently never applied his brakes or attempted to swerve to avoid the accident even though the rear of the trailer was highly reflectorized and the trailer's lights and emergency flashers were on.

Charles Curtis, a 14–year driver for Colonial Freight Systems ("Colonial"), was operating the tractor trailer on the evening of the accident. He had pulled off the interstate only two minutes before the collision to check his tires, to stretch his legs, and to relieve himself since he had been driving for approximately three and one-half hours. Mr. Curtis had not set out emergency triangles or flares behind his vehicle because he did not intend to remain parked for long.

The force of the impact pushed the Blazer under the trailer and threw Mr. Curtis into a ditch. Mr. Mansfield was killed on impact, and Mr. Steele was severely injured. The investigating officer found an opened beer can in the Blazer but no evidence of drugs or other alcoholic beverages. Blood tests conducted after the accident revealed that Mr. Steele's blood alcohol level was .16%[1] and that Mr. Mansfield's blood alcohol level was .20%. Mr. Mansfield's blood also tested positive for cocaine.

Mr. Mansfield's father, acting as administrator of his son's estate, filed suit against

---

1. Tenn.Code Ann. § 55–10–408(b) (1988) recognizes that a person is presumed to be under the influence of alcohol if his or her blood contains .10% or more alcohol by weight.

**530**

Mr. Steele, Mr. Summerford, and Colonial. He also filed a separate suit against Paul Clute & Associates and the Classic Cat that was later consolidated with the first suit. The estate eventually settled with Paul Clute & Associates and did not appeal from the summary judgment dismissing its claims against the Classic Cat. However, it perfected this appeal from the summary judgment dismissing its claims against Colonial after the trial court certified its order as final under Tenn.R.Civ.P. 54.02.

## II.

Mr. Mansfield's estate argues first that the trial court should not have granted Colonial's summary judgment motion because summary judgments are particularly inappropriate in negligence cases. We do not believe that such broad generalizations concerning the utility of summary judgments are correct in light of the Tennessee Supreme Court's most recent decisions.

■ The Supreme Court initially expressed some reluctance concerning the use of summary judgments in negligence cases. *Bowman v. Henard,* 547 S.W.2d 527, 530 (Tenn.1977). However, it has now held unequivocally that summary judgments are not disfavored procedural devices and that they may be used to conclude any case [2] that can and should be resolved on legal issues alone. *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993). Thus, our role on appeal is not to dwell on the nature of the cause of action but rather to determine whether the requirements of Tenn.R.Civ.P. 56 have been satisfied. *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn.1991); *Hill v. City of Chattanooga,* 533 S.W.2d 311, 312 (Tenn. Ct.App.1975).

Tenn.R.Civ.P. 56.03 contains only two prerequisites for granting a summary judgment. First, there must be no genuine issue as to any fact necessary to resolve the substantive claim or defense embodied in the summary judgment motion. *Byrd v. Hall,* 847 S.W.2d at 210; *Rollins v. Winn Dixie,* 780 S.W.2d 765, 767 (Tenn.Ct.App.1989). Second, the moving party must be entitled to a judgment as a matter of law.

## III.

■ We consider first whether there exists any genuine issues with regard to the facts needed to resolve the dispositive legal issues in this case. We examine the record recognizing that summary judgments are not substitutes for trials of disputed factual issues, *Poore v. Magnavox Co.,* 666 S.W.2d 48, 49 (Tenn.1984), and that a reviewing court's role is not to weigh the evidence, to resolve factual issues, or to choose between the inferences that may be drawn from the facts. *Byrd v. Hall,* 847 S.W.2d at 211; *Bellamy v. Federal Express Corp.,* 749 S.W.2d 31, 33 (Tenn.1988).

■ Courts must view the evidence in a summary judgment proceeding in the light most favorable to the nonmoving party and must also draw all reasonable factual inferences in the nonmoving party's favor. *Byrd v. Hall,* 847 S.W.2d at 210–11; *Whitehead v. Dycho Co.,* 775 S.W.2d 593, 598 (Tenn.1989). A summary judgment is appropriate only when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion. *Brookins v. The Round Table, Inc.,* 624 S.W.2d 547, 550 (Tenn.1981). Thus, a summary judgment must be set aside, even when the facts are not in dispute, if a genuine doubt exists with regard to the conclusions to be drawn from the facts. *Byrd v. Hall,* 847 S.W.2d at 211; *Blue Diamond Coal Co. v. Holland–America Ins. Co.,* 671 S.W.2d 829, 834 (Tenn.1984).

We find that reasonable minds cannot differ with regard to the following material facts: (1) that Mr. Mansfield and Mr. Steele were together for most of the day of the accident; (2) that Mr. Mansfield and Mr. Steele were drinking alcoholic beverages in each other's presence for an extended period of time prior to the accident; (3) that Mr. Steele was driving negligently when the accident occurred; (4) that Mr. Mansfield knowingly permitted Mr. Steele to drive the Blaz-

---

**2.** Workers' compensation cases are now the only type of case in which the Supreme Court discourages the use of summary judgments. *Byrd v.* *Hall,* 847 S.W.2d at 210 n. 1; *Berry v. Consolidated Sys., Inc.,* 804 S.W.2d 445, 446 (Tenn. 1991).

er in which he was riding at the time of the accident; and (5) that both Mr. Mansfield and Mr. Steele were legally intoxicated when Mr. Steele drove the Blazer into the rear of the parked tractor trailer.

## IV.

The only issue remaining is whether Colonial is entitled to a judgment as a matter of law based on the five undisputed material facts discussed in the preceding section. Under the contributory negligence principles applicable to this case, we find that Colonial was entitled to a dismissal of Mr. Mansfield's claims because his negligence barred his right to recover from Colonial as a matter of law.

### A.

■ On May 4, 1992, the Supreme Court replaced the traditional contributory negligence principles that had been part of our jurisprudence since the earliest days with a modified comparative fault system. *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn.1992). Both in *McIntyre* itself and in a later case, the Supreme Court made it clear that the new comparative fault principles applied only to cases tried or retried after May 4, 1992 or to cases on appeal in which the comparative fault issue had been raised "at an appropriate stage in the litigation." *Cook v. Spinnaker's of Rivergate, Inc.*, 846 S.W.2d 810, 812 (Tenn.1993); *McIntyre v. Balentine*, 833 S.W.2d at 58.

Neither the complaint nor the amended complaint that Mr. Mansfield's estate filed against Colonial sought to have its claims decided using comparative fault principles. The estate did not raise the comparative fault issue in response to Colonial's motion for summary judgment and did not raise the question in a post-trial motion even though *McIntyre v. Balentine* was filed before the time for filing post-trial motions had expired. Since the estate did not raise the issue in response to Colonial's motion for summary judgment, the comparative fault doctrine does not apply to the estate's claims against Colonial, and we must view the summary judgment in light of the law as it existed before *McIntyre v. Balentine* was decided. *See Cook v. Spinnaker's of Rivergate, Inc.*, 846 S.W.2d at 812.

### B.

■ Mr. Mansfield's estate asserts that Colonial was not entitled to a judgment as a matter of law because Mr. Curtis negligently failed to place emergency reflectors on the highway behind the tractor trailer[3] and because this negligent conduct could also have been a proximate cause of Mr. Mansfield's death. This argument overlooks the traditional common-law rule that a plaintiff's negligence defeats its right to recover from a negligent defendant. *Dixon v. Lobenstein*, 175 Tenn. 105, 108, 132 S.W.2d 215, 216 (1939); *Bejach v. Colby*, 141 Tenn. 686, 691, 214 S.W. 869, 870 (1919).

■ Passengers in motor vehicles have a duty to exercise reasonable care for their own safety. *Harrison v. Pittman*, 534 S.W.2d 311, 315 (Tenn.1976); *Rollins v. Winn Dixie*, 780 S.W.2d 765, 768 (Tenn.Ct. App.1989). They are expected to warn the driver of unseen dangers, to protest excessive speeds, and to refrain from riding in an automobile operated by an intoxicated or reckless driver. *Cole v. Woods*, 548 S.W.2d 640, 650 (Tenn.1977); *Schwartz v. Johnson*, 152 Tenn. 586, 592, 280 S.W. 32, 33 (1926). Thus, this Court has held:

> As a general proposition, a guest-passenger is precluded from recovering for injuries sustained in an automobile accident where the intoxicated condition of the driver of the automobile in which [the passenger] was riding was a proximate cause of the accident, if the guest-passenger knew or should have known of the driver's intoxication at the time the guest-passenger volunteered to ride in the automobile.

---

3. The estate's current theory is that Mr. Curtis's failure to place reflectors behind his tractor trailer was negligence *per se* because Tenn.Code Ann. §§ 55–9–103, –104 (1988) and 49 C.F.R. § 392.22 (1992) require drivers of stopped vehicles to place warning devices behind their vehicles. The estate's interpretation of the state statutes and the federal regulation is questionable; however, we are taking it as correct since we are viewing the record in the light most favorable to the estate.

*Harvey v. Wheeler,* 57 Tenn.App. 642, 646, 423 S.W.2d 283, 285 (1967).

Mr. Mansfield had been with Mr. Steele during the entire day and was aware of the extent of Mr. Steele's drinking. Nevertheless, Mr. Mansfield permitted Mr. Steele to drive Mr. Summerford's Blazer and decided to ride back to Kingston Springs with him. Mr. Mansfield himself was under the influence of alcohol and cocaine at the time of the accident. If Mr. Steele's alcohol consumption did not warn Mr. Mansfield that he should not be riding in the vehicle, Mr. Steele's driving should have. Based on the undisputed facts, reasonable minds could only conclude that Mr. Mansfield failed to use reasonable care to look out for his own safety.

Conduct constitutes a proximate cause of an injury (1) if it was a substantial factor in bringing about the injury; (2) if no rule or policy relieves the actor from liability because of the manner in which the conduct resulted in the harm; and (3) if the injury could have been reasonably foreseen or anticipated by a reasonable person of ordinary intelligence. *McClenahan v. Cooley,* 806 S.W.2d 767, 775 (Tenn.1991). An action need not be the sole cause nor the last or nearest cause to be a proximate cause, and more than one act of negligence may proximately cause an injury. *McClenahan v. Cooley,* 806 S.W.2d at 775; *Carney v. Goodman,* 38 Tenn.App. 55, 62, 270 S.W.2d 572, 575 (1954).

The principle of remote contributory negligence enables negligent plaintiffs to avoid the harsh effects of the contributory negligence doctrine. It provides that a negligent plaintiff will not be prevented from recovering if his or her negligence was "too far removed as to time or place, or causative force, to be a direct or proximate cause of the accident." *Arnold v. Hayslett,* 655 S.W.2d 941, 945 (Tenn.1983); *Street v. Calvert,* 541 S.W.2d 576, 585 (Tenn.1976); *Butler v. Ballard,* 696 S.W.2d 533, 541 (Tenn.Ct.App. 1985). However, the principle does not apply when a plaintiff's contributory negligence is a proximate cause of his or her injuries or death. *Kelley v. Johnson,* 796 S.W.2d 155, 159 (Tenn.Ct.App.1990).

We find that reasonable minds cannot disagree (1) that Mr. Mansfield's decision to ride with Mr. Steele was a substantial factor in his death; (2) that the harm that could arise from riding with a driver in Mr. Steele's condition was foreseeable, *Stinson v. Daniel,* 220 Tenn. 70, 79, 414 S.W.2d 7, 10 (1967); and (3) that there is no legal principle or policy reason that would relieve Mr. Mansfield from responsibility for his conduct on the night he was killed. Therefore, we find that reasonable persons would not differ in their conclusion that Mr. Mansfield was contributorily negligent and that his failure to use reasonable care for his own safety proximately caused his death. Accordingly, Colonial was entitled to a judgment as a matter of law because Mr. Mansfield's contributory negligence barred his claim.

## V.

We affirm the summary judgment dismissing the estate's claims against Colonial and remand the case to the trial court for further proceedings. We tax the costs of this appeal to James Mansfield, as administrator of Craig Mansfield's estate, and his surety for which execution, if necessary, may issue.

TODD, P.J., and CANTRELL, J., concur.

### ORDER ON PETITION FOR REHEARING

James Mansfield has filed a petition for rehearing asserting that this court's May 12, 1993 opinion contains three factual statements that are either disputed or not supported by the record. He also asserts that this court misapplied the contributory negligence principles applicable to guest-passengers of intoxicated drivers.

We turn to the three challenged factual statements. Mr. Mansfield first takes issue with the characterization of the scene of the accident as a "construction zone." We have reviewed the record and have determined that it contains no evidence that the portion of I–40 where the accident occurred was under construction. Therefore, Mr. Mansfield's point is well-taken, and the words "through a construction zone" are deleted from the second full paragraph on page 3 of

the opinion. The opinion should have stated that the accident occurred shortly after the interstate highway narrowed from three to two lanes. This factual mischaracterization of the condition of the highway is not material and does not alter our conclusions.

Mr. Mansfield next insists that the testimony of Charles Ashby Parsons creates a genuine issue of material fact with regard to whether Mr. Curtis had activated the truck's emergency flashing lights. Mr. Curtis testified unequivocally that he had activated the emergency flashers before he left the cab of the tractor. Mr. Parsons's deposition testimony, viewed most favorably to Mr. Mansfield, was that he did not remember whether the truck's emergency flashers were on or not. Mr. Parsons's lack of memory on this issue does not create a material factual dispute.

Finally, Mr. Mansfield restates the argument in his original brief that the record contains factual disputes concerning Craig Mansfield's knowledge of the extent of Brett Steele's drinking prior to the accident. He relies principally on the deposition testimony of Mr. Mansfield's drinking companions that Mr. Steele did not appear to be intoxicated before he left the Classic Cat with Craig Mansfield. None of these witnesses provided direct testimony concerning Craig Mansfield's knowledge of Mr. Steele's condition. Freddie D. Summerford simply stated that neither Mr. Steele nor Craig Mansfield appeared intoxicated to him, and William T. Stevenson stated that the two men were not "stumbling drunk," "belligerent," or "out of hand."

The record is undisputed that Mr. Steele had been drinking throughout the day and that Craig Mansfield had been with him most of the time. Mr. Steele's blood alcohol level was measured at .16% after the accident. Based on these undisputed facts, reasonable minds could only have concluded that Craig Mansfield knew or should have known that Mr. Steele had been drinking throughout the day and that he was legally intoxicated. These specific findings are sufficient to support the trial court's conclusion that Colonial Freight Systems was entitled to a judgment as a matter of law on its contributory negligence defense.

The petition for rehearing is respectfully denied.