IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 20, 2013 Session

## DAVEY MANN and wife, TERESA MANN v. ALPHA TAU OMEGA FRATERNITY, Inc., a non-profit organization, ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. CT-00364607     John R. McCarroll, Judge

No. W2012-00972-COA-R3-CV - Filed March 22, 2013

Plaintiffs sued the defendant national fraternity, among others, following an automobile accident with an apparent fraternity pledge. The trial court granted summary judgment to the national fraternity finding that it owed no duty of care to Plaintiffs, and it denied Plaintiffs' motion to amend to allege the national fraternity's vicarious liability based upon a principal/agent relationship between the national fraternity and the local fraternity chapter and/or between the national fraternity and local fraternity chapter members/prospective members. For the following reasons, we reverse the trial court's grant of summary judgment to the national fraternity as well as its denial of Plaintiffs' motion to amend, and we remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined and Holly M. Kirby, J., joined in result only.

Gary K. Smith, J. Mark Benfield, Memphis, Tennessee, for the appellants, Davey Mann and wife, Teresa Mann

G. Coble Caperton, Mary L. Wagner, Memphis, Tennessee, for the appellee, Alpha Tau Omega Fraternity, Inc.

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

On July 22, 2006, Davey Mann and Teresa Mann ("Plaintiffs") were injured in an automobile accident when Jeffrey Callicutt allegedly crossed the centerline, causing a head-on collision. Prior to the accident, Callicutt had allegedly consumed alcoholic beverages at the home of Eric and Lori Cox during a social gathering of members/prospective members of Alpha Tau Omega Fraternity ("ATO" or "National ATO"), specifically its University of Memphis, Tennessee Zeta Rho Chapter ("Local ATO").

On July 17, 2007, Plaintiffs filed a personal injury lawsuit against Jeffrey Callicutt and his parents, William and Deborah Callicutt, National ATO, Local ATO, Eric and Lori Cox, and "John Doe, A through Z[.]" On March 3, 2008, Plaintiffs filed an amended complaint, specifically naming defendants previously identified as "John Doe, A through Z[.]" However, the trial court dismissed these newly-added defendants based upon the statute of limitations. The defendant Callicuts then amended their answer to allege the comparative fault of the previously dismissed defendants, and Plaintiffs filed a second amended complaint to assert claims against them. The newly-added defendants were again dismissed based upon the statute of limitations, but their dismissal was ultimately reversed by the Tennessee Supreme Court. *See Mann v. Alpha Tau Omega Fraternity*, 380 S.W.3d 42 (Tenn. 2012).

On March 25, 2011, National ATO–the only defendant involved in the current appeal–filed a Motion for Summary Judgment and an accompanying memorandum, a Statement of Undisputed Facts, and the Affidavit of its Chief Executive Officer, Wynn Smiley. National ATO claimed that it did not and could not control the day-to-day operations of its local chapters and that its disciplinary powers were limited to post-violation punishment. Thus, National ATO claimed that as a matter of law it did not owe a duty of care to Plaintiffs, and therefore, it could not be held liable for their injuries and/or damages.

On January 5, 2012, Plaintiffs responded by arguing that a special relationship existed between National ATO and Local ATO, and that based upon this relationship, National ATO owed a duty of care to Plaintiffs. Specifically, Plaintiffs argued that National ATO possessed the ability and authority to control Local ATO, and that its mere failure to do so should not absolve it of liability. That same day, Plaintiffs filed a third motion to amend their complaint, seeking to allege a principal/agent relationship between National ATO and co-defendants Local ATO, driver Jeffrey Calicutt, and alleged Local ATO members/officers E.J. Cox, Daniel Kelly, Nicholas Beaver, Zachary Beaver, and John Condon, III, and to allege National ATO's vicarious liability based upon this relationship.

On January 12, 2012, a hearing was held on National ATO's Motion for Summary Judgment, after which, the trial court entered an Order granting the motion, finding that the undisputed facts demonstrated that National ATO did not owe a legal duty to Plaintiffs, and therefore that National ATO had negated an essential element of Plaintiffs' claims. The trial court also denied Plaintiffs' motion to amend because it found an amendment "would be futile because of the Court's ruling on [National ATO's] Motion for Summary Judgment . . . that there is no duty on the part of [National ATO]." The trial court's order was made final pursuant to Tennessee Rule of Civil Procedure 54.02, and Plaintiffs timely appealed to this Court.

## II.  ISSUES PRESENTED

Appellants present the following issues for review, as summarized:

1.  Whether the trial court erred in granting National ATO's Motion for Summary Judgment finding that it owed no legal duty to Appellants; and

2.  Whether the trial court erred in denying Appellants' Motion to Amend Complaint.

For the following reasons, we reverse the trial court's grant of summary judgment to National ATO as well as its denial of Plaintiffs' motion to amend, and we remand for further proceedings consistent with this opinion.

## III.  DISCUSSION

### 1. Grant of Summary Judgment

As stated above, National ATO moved for summary judgment claiming that, as a matter of law, it did not owe a duty of care to Plaintiffs. In granting summary judgment to National ATO, the trial court determined that the undisputed facts demonstrated that National ATO did not owe a legal duty to Plaintiffs, and therefore that National ATO had negated an essential element of Plaintiffs' negligence claim.

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.**
"When ascertaining whether a genuine dispute of material fact exists in a particular case,
the courts must focus on (1) whether the evidence establishing the facts is admissible, (2)
whether a factual dispute actually exists, and, if a factual dispute exists, (3) whether the
factual dispute is material to the grounds of the summary judgment." *Green v. Green,*
293 S.W.3d 493, 513 (Tenn. 2009).

"The party seeking the summary judgment has the burden of demonstrating that no
genuine disputes of material fact exist and that it is entitled to a judgment as a matter of
law." *Green,* 293 S.W.3d at 513 (citing *Martin v. Norfolk S. Ry.,* 271 S.W.3d 76, 83
(Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County,* 259 S.W.3d 705,
710 (Tenn. 2008)). "The moving party may make the required showing and therefore shift
the burden of production to the nonmoving party by either: (1) affirmatively negating an
essential element of the nonmoving party's claim; or (2) showing that the nonmoving
party cannot prove an essential element of the claim at trial." *Martin,* 271 S.W.3d at 83
(citing *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 5 (Tenn. 2008)).[1]  In order to negate an
essential element of the claim, "the moving party must point to evidence that tends to
disprove an essential factual claim made by the nonmoving party." *Id.* at 84 (citing *Blair
v. W. Town Mall,* 130 S.W.3d 761, 768 (Tenn. 2004)).  "It is not enough for the moving
party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a
party's ability to prove an element at trial." *Hannan*, 270 S.W.3d at 8.  "If the moving
party is unable to make the required showing, then its motion for summary judgment will
fail." *Martin*, 271 S.W.3d at 83 (citing *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn. 1993)).

If the moving party does make a properly supported motion, "[t]he non-moving
party must then establish the existence of the essential elements of the claim." *McCarley
v. West Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn. 1998).  The nonmoving party is
required to produce evidence of specific facts establishing that genuine issues of material
fact exist. *Martin,* 271 S.W.3d at 84 (citing *McCarley,* 960 S.W.2d at 588; *Byrd,* 847
S.W.2d at 215). "The nonmoving party may satisfy its burden of production by: (1)
pointing to evidence establishing material factual disputes that were over-looked or
ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party;
(3) producing additional evidence establishing the existence of a genuine issue for trial; or
(4) submitting an affidavit explaining the necessity for further discovery pursuant to

---

[1]Recently, the Tennessee General Assembly enacted a law that legislatively reversed the Tennessee
Supreme Court's holding in *Hannan*. *See* Tenn. Code Ann. § 20-16-101.  However, the statute applies only
to cases filed on or after July 1, 2011.  Thus, in this appeal, we apply the summary judgment standard set
forth in *Hannan*.

Tenn. R. Civ. P., Rule 56.06." *Id.* (citing *McCarley,* 960 S.W.2d at 588; *Byrd,* 847 S.W.2d at 215 n.6). "The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party." *Id.* (citing *McCarley,* 960 S.W.2d at 588). The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness.

On appeal, Plaintiffs argue that the trial court erred in granting summary judgment to National ATO based upon its conclusion that National ATO had negated the "duty" element of Plaintiffs' claim.[2] "In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: '(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.'" *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). "[A]lthough all persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others, as a general rule, one person owes no affirmative duty to protect or warn others endangered by the conduct of a third party." *Newton v. Tinsley*, 970 S.W.2d 490, 492 (Tenn. Ct. App. 1997) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993); *Nichols v. Atnip*, 844 S.W.2d 655, 661 (Tenn. Ct. App. 1992)). However, "[t]o mitigate the harshness of this rule, the courts of this state have carved out exceptions in cases where the defendant stands in some special relationship either to the individual whose conduct threatens to cause harm or to the individual exposed to the harm."[3] *Id.* (citing *Bradshaw*, 854 S.W.2d at 871; *Nichols*, 844 S.W.2d at 661); *see also Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 819 (Tenn. 2008) ("[I]f an individual stands in a special relationship to another individual who is the source of the danger . . . then the individual assumes an affirmative duty to exercise reasonable care to either control the danger or protect the vulnerable.") (citations omitted). "[I]n order for the duty to control a third party's conduct to arise, the actor must

---

[2]Generally, "negligence cases are not amenable to disposition on summary judgment." *Fruge v. Doe,* 952 S.W.2d 408, 410 (Tenn. 1997) (citing *McClenahan v. Cooley,* 806 S.W.2d 767, 775–76 (Tenn. 1991); *Keene v. Cracker Barrel Old Country Store, Inc.,* 853 S.W.2d 501, 502–03 (Tenn. Ct. App. 1992)). However, any civil case, including a negligence case, may be resolved at the summary judgment stage if the matter "can be and should be resolved on legal issues alone." *Id.* (citing *Mansfield v. Colonial Freight Sys.,* 862 S.W.2d 527 (Tenn .Ct. App. 1993)).

[3]Plaintiffs do not allege the existence of a special relationship between themselves and National ATO. Instead, they argue only that a special relationship existed between National ATO and Local ATO and/or between National ATO and Local ATO members/prospective members.

have the means and ability to control the third party." ***Id.*** (citing *Carroll v. Thomas*, 1988 WL 22833, at *3 (Tenn. Ct. App. Mar. 8, 1988) *perm. app. denied* (Tenn. May 23, 1988)).

In considering whether a defendant owes a duty of care to a particular plaintiff, Tennessee courts consider both public policy and whether the risk of harm is unreasonable. ***Downs***, 263 S.W.3d at 820 (citing *Burroughs v. Magee*, 118 S.W.3d 323, 329 (Tenn. 2003); *Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn. 1997)). "Public policy considerations are relevant because 'the imposition of a legal duty reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct.'" ***Id.*** (quoting *Bradshaw*, 854 S.W.2d at 870). Additionally, as stated by our Supreme Court:

> The foreseeability of the harm is a key factor in the equation because, in general terms, "[f]oreseeability is the test of negligence." "'A risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable.'" However, foreseeability alone does not create a duty to exercise reasonable care. If the risk is foreseeable, then courts should weigh the remaining factors to determine if an imposition of duty is justified. In the end, whether a defendant owed or assumed a duty of care to a plaintiff is a question of law for the court to decide.

***Id.*** (internal citations omitted).

This appeal centers upon whether a special relationship existed between National ATO and Local ATO or between National ATO and Local ATO members[4] such that a duty

---

[4]A dispute exists regarding the status of Jeffrey Callicutt's ATO membership. Plaintiffs claim that prior to the incident, Mr. Callicutt "had recently accepted a bid . . .to become a[n ATO] pledge[.]" National ATO, however, contends that Mr. Callicutt "was never a pledge or active member" of Local ATO, and that he "[h]e had only been offered an invitation to join and had not been through the pledging ceremony[.]" Notwithstanding this factual dispute, National ATO states that Mr. Callicutt's membership status is not material to its Motion for Summary Judgment, and Plaintiffs do not raise this factual dispute as a ground precluding summary judgment. For the purpose of this appeal, we find it unnecessary to differentiate between fraternity members and prospective fraternity members. Thus, we will consider whether a special
(continued...)

could be imposed upon National ATO to control the conduct of a third party–Local ATO or Local ATO members. National ATO contends that no special relationship existed because, it claims, it lacked the ability to control either Local ATO or Local ATO members. In support of this lack-of-control argument, National ATO cites the Affidavit of its CEO, Wynn Smiley, which provided in part:

> [National ATO] is a non-profit corporation, incorporated under the laws of the state of Maryland with offices located at 1 North Pennsylvania Street, 12th floor, Indianapolis, Indiana, 46204. [National ATO] exists to ensure ritualistic conformity with the fraternity's traditions and to further the fraternity's purpose of friendship and brotherhood, education, and service to the community.
>
> [National ATO] does not and cannot control the day to day activities of the local chapters. All of the local chapters are self governing and financially self sufficient. . . . [National ATO] only has the ability to remove a local chapter's charter or suspend an individual member for that chapter or member's failure to abide by policies adopted by the National Fraternity. However, the National Fraternity only does so after the occurrence of any such conduct and notice of said conduct to [National ATO].

Essentially, National ATO claims that because of the distance between its Indiana headquarters and the University of Memphis, the fraternity's large number of undergraduate members, and its alleged ability to impose only *after*-incident punishment, it had no ability to control the actions of Local ATO or its members. Accordingly, National ATO argues that no special relationship arose between it and Local ATO and/or its members, and therefore, that it owed no duty of care to Plaintiffs.

Additionally, National ATO insists that public policy considerations do not support the finding of a duty in this case. National ATO points out that it is undisputed that prior to the collision, driver Jeffrey Callicut had attended a gathering at the home of Eric and Lori Cox, and that National ATO had no prior knowledge of this gathering. National ATO contends that "it is unreasonable to expect that [National ATO] in Indiana would be able to predict" the sequence of events which led to the collision. Furthermore, National ATO insists that "any possible benefit" of imposing a duty upon it would be greatly outweighed

_____

[4](...continued)
relationship existed between National ATO and assumed-pledge Mr. Callicutt.

by increased oversight costs as well as the change of National ATO's purpose "from that of a fraternal brotherhood to that of a parental and policing organization." National ATO cites numerous cases in which courts in other jurisdictions have found a lack of control between a national fraternity and its local chapter.

Plaintiffs, of course, contend that a special relationship existed between National ATO and Local ATO and/or its members/prospective members, and therefore, that National ATO owed a duty of care to Plaintiffs. As evidence of "control" creating a special relationship, Plaintiffs primarily rely upon National ATO's bylaws, which provide in part:

Article I.

Purpose

Section 1. The purposes for which the Alpha Tau Omega Fraternity, Inc., a non-profit corporation formed under the Laws of the State of Maryland on January 1, 1879 (hereinafter "Alpha Tau Omega") is organized and shall be operated are those that are exclusively social, educational, and charitable in nature, including, without limiting the generality of the foregoing, promoting and cultivating social interaction among its members; a fraternity for the promotion and culture of friendship and brotherly love among its members; *educating and training its members to be leaders in daily life, including the development of proper values*; and to encourage its members to provide service to their communities, states, and country; *and Alpha Tau Omega shall be empowered to engage in other and further means as may be necessary and proper to accomplish the foregoing purposes*, not without the scope of the subsequent section hereof.

. . . .

Article IV.

Board of Directors

Section 1. There shall be a board of directors which *shall govern, supervise and control the business, property, and affairs of Alpha Tau Omega*. The Board of Directors shall determine the policies of Alpha Tau Omega and prosecute its purposes, including amending the Policies and Procedures of Alpha Tau Omega, appointing and remunerating agents and employees, monitoring the budget of Alpha Tau Omega, providing for the collecting and disbursing of the funds of Alpha Tau Omega, and *granting and revoking charters of chapters and alumni associations*.

. . . .

Article VII.

Judicial

Section 1.  The judicial power of Alpha Tau Omega shall be vested in a National Chancellor and such bodies subordinate to the National Chancellor as may be established by the Board of Directors. . . .

Section 2.  The judicial power shall extend to all cases involving individual and chapter discipline, those arising under these Bylaws or the Policies and Procedures, to all controversies between Alpha Tau Omega and a chapter thereof, to all controversies between officers thereof, to all controversies between chapters thereof, to all controversies between a chapter and a member thereof, and to all controversies between a chapter and a member of another chapter.

(emphasis added).  Plaintiffs claim that the bylaws demonstrate National ATO's ability to control Local ATO, and they maintain that National ATO's apparent decision *not to* exercise this control should not foreclose a duty finding.  Moreover, Plaintiffs contend that even if National ATO is limited to *after*-incident response, a prior alcohol violation at Local ATO afforded National ATO the opportunity to exercise its control, yet it declined to do so. Finally, Plaintiffs argue that public policy dictates a duty finding in this case because the foreseeable risk of harm greatly outweighs National ATO's costs in implementing an effective alcohol policy.

In response, National ATO argues that its bylaws do not grant it the control Plaintiffs suggest.  National ATO points out that the bylaws define "Alpha Tau Omega" as "Alpha Tau Omega Fraternity, Inc., a non-profit corporation formed under the Laws of the State of Maryland on January 1, 1879[,]" and therefore, it contends that pursuant to Article IV of the bylaws, its board of directors is only vested with authority to "govern, supervise and control" *National* ATO–not Local ATO or its members/prospective members–and that its board of directors' control over Local ATO is limited to granting charters and revoking charters *after* a violation has occurred.  Finally, National ATO contends that any alleged prior violation does not *create* a duty, but instead "would relate solely to the issue of negligence of [National ATO] *if* it owed a duty of care."  Moreover, at oral argument before this Court, National ATO claimed that the prior incident was non-alcohol-related, and therefore, that it had no bearing on this case.

In its Order granting National ATO's motion for summary judgment, the trial court listed the undisputed facts as follows:[5]

a. This action arises out of an automobile accident which occurred on July 22, 2006[.]

b. During said accident a vehicle driven by Defendant Jeffrey Callicut collided with the Plaintiffs' vehicle.

c. The vehicle driven by Jeffrey Callicutt was owned by his parents, William and Deborah Callicutt.

d. Defendant Alpha Tau Omega (hereinafter "National Fraternity") had no ownership interest in the vehicle in which Mr. Callicutt was driving at the time of the accident.

e. The local Chapter of the National Fraternity at the University of Memphis is named the Tennessee Zeta Rho Chapter of Alpha Tau Omega Fraternity (hereinafter, "Local Chapter").

f. Prior to the accident alleged in Plaintiff's Complaint, Mr. Callicutt attended a gathering at the home of Eric and Lori Cox.

g. The National Fraternity did not and never has held any ownership interest in the home of Eric and Lori Cox.

h. The National Fraternity did not have knowledge of the gathering prior to the accident alleged in Plaintiff's Complaint.

i. The National Fraternity has not appointed the Local Chapter, nor any individual member thereof, as agent or representative of National Fraternity.[6]

j. The National Fraternity is a not-for-profit corporation with its principal place of business in Indianapolis, Indiana.

k. The National Fraternity has approximately 130 local chapters at universities and colleges across the United States.

l. National Fraternity does not supervise the day to day operations of its local chapters.

---

[5]The trial court's findings are fully supported by the National ATO's Statement of Undisputed Facts and Plaintiffs' Response thereto.

[6]In their Response to National ATO's Statement of Undisputed Facts, Plaintiffs agreed that no agent had been "formal[ly]" appointed, but they contended that "the question of agency is a question of fact for a jury to determine."

Based upon these facts, the trial court concluded that National ATO had negated an essential element of Plaintiffs' claim–that National ATO owed a duty of care to Plaintiffs–and therefore, it dismissed Plaintiffs' claim against National ATO.

Although both parties place great emphasis on National ATO's bylaws, we are not convinced that resolution of this case is predicated upon a consideration of them. As stated above, "in order for the duty to control a third party's conduct to arise, the actor must have the means and ability to control the third party." *Newton*, 970 S.W.2d at 492 (citing *Carroll*, 1988 WL 22833, at *3). Even if National ATO is correct that the bylaws do not grant National ATO authority to control its local chapters or those chapters' members, it does not necessarily follow that such authority could not be derived elsewhere. Additionally, that National ATO undisputedly *does not* supervise the day-to-day operations of its local chapters does not equate to a finding that it *could not* exercise such supervision if it desired to do so or that it *should not* exercise such supervision based upon public policy considerations.

Moreover, National ATO's claim that it is able to impose only *after*-incident punishment, even if true, does not foreclose a finding of control in this case because the evidence demonstrates that National ATO was aware of alcohol-related recruitment violations in 2005–one year prior to the incident in question.[7] National ATO may very well be correct that its headquarters' distance from Memphis and its large number of undergraduate members renders chapter/member control infeasible; however, infeasibility does not satisfy the stringent *Hannan* standard which requires a moving party to affirmatively negate an essential element of the nonmovant's claim. At a trial in this matter, the evidence may be deemed insufficient to demonstrate that National ATO possessed the means and ability to control Local ATO and/or its members/prospective members. ***See id.*** (citation

---

[7]The record indicates that Local ATO was found guilty of the following Interfraternity Council Recruitment Violations:

> Article III, Section 1: No chapter members (active, inactive new member or alumni) collectively, or individually, shall purchase for, serve to, sell or give any form of alcoholic beverages to a rushee. If it is discovered the rules had been broken, violating chapters and individual members will be severely punished. The penalty may include, but is not limited to, disciplinary probation, suspension from IFC, fine assessment and/or loss of organizational status by University officials.
>
> Article III, Section 3: No chapter shall have a third party (i.e. girlfriend, non-Fraternity member, friend) purchase for, sell to, give to, or serve alcohol to a rushee and member fraternities found in violation may face a Judicial process outlined in The Judicial Board Manual and Judicial Code for the Interfraternity Council of the University of Memphis.

The record demonstrates that a representative at National ATO's headquarters was copied on the correspondence in the matter.

omitted). However, for summary dismissal, National ATO is required to affirmatively demonstrate that it lacked control or that control cannot be proven at trial. Because we find that National ATO has demonstrated neither, we conclude that the trial court erred in granting summary judgment. The grant of summary judgment to National ATO is therefore reversed.

## 2. Denial of Motion to Amend Complaint

As stated above, after granting National ATO's motion for summary judgment, the trial court denied Plaintiffs' motion to amend their complaint to allege a principal/agent relationship between National ATO and co-defendants Local ATO, driver Jeffrey Calicutt, and alleged Local ATO members/officers E.J. Cox, Daniel Kelly, Nicholas Beaver, Zachary Beaver, and John Condon, III, and to allege National ATO's vicarious liability based upon this relationship. In denying the motion, the trial court found an amendment "would be futile because of the Court's ruling on [National ATO's] Motion for Summary Judgment . . . that there is no duty on the part of [National ATO]."

A trial court's decision to grant or deny a motion to amend a pleading pursuant to Tennessee Rule of Civil Procedure 15.01 is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Conley v. Life Care Centers of Am., Inc.*, 236 S.W.3d 713, 723 (Tenn. Ct. App. 2007). A trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). However, "[w]hile decisions whether to permit an amendment are discretionary . . . Tenn. R. Civ. P. 15.01 substantially lessens a trial court's discretion to deny a requested amendment." *Hardcastle v. Harris*, 170 S.W.3d 67, 80-81 (Tenn. Ct. App. 2004) (citing *Daniels v. Talent*, 212 Tenn. 447, 462, 370 S.W.2d 515, 522 (1963); *Branch v. Warren*, 527 S.W.2d 89, 91-92 (Tenn. 1975)); *see also* Tenn. R. Civ. P. 15.01 ("[L]eave to amend shall be freely given when justice so requires."). A trial court may consider several factors when deciding whether to allow leave to amend a pleading, including "lack of notice, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue delay in the filing of the motion, undue prejudice to the opposing party, and futility of the proposed amendment."[8] *Conley*, 236 S.W.3d at 723-24 (citing *Hall v. Shelby Cnty. Ret. Bd.*, 922

---

[8]In *Hardcastle*, the middle section of this Court stated that "the most important [factor] is the proposed amendment's potential prejudicial effect on the opposing party." 170 S.W.3d at 81 (citing 6 Charles
(continued...)

S.W.2d 543, 546 (Tenn. Ct. App. 1995)).

"It has long been the view of Tennessee courts that, in its broadest sense, the term agency 'includes every relation in which one person acts for or represents another.'" ***McInturff v. Battle Ground Academy of Franklin***, No. M2009-00504-COA-R3-CV, 2009 WL 4878614, at *2 (Tenn. Ct. App. Dec. 16, 2009) (citing *Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 432 (Tenn. 2008)). To determine whether an agency relationship exists, the court examines the parties' relationship and their conduct. ***Id.*** (citations omitted). "'Whether an agency relationship exists 'is a question of fact under the circumstances of the particular case[.]'''" ***Id.*** (quoting *McCay v. Mitchell*, 62 Tenn. App. 424, 463 S.W.2d 710, 715 (Tenn. Ct. App. 1970)). "The right to control the conduct of the agent is the essential test in determining whether an agency relationship exists." ***Id.*** (quoting *Jack Daniel Distillery v. Jackson*, 740 S.W.2d 413, 416 (Tenn. 1987)).

On appeal, Plaintiffs contend that the trial court erroneously focused on the duty owed *directly* to Plaintiffs by National ATO when it should have focused on the duty owed to Plaintiffs by National ATO *by virtue of National ATO's principal/agent relationship* with co-defendants Local ATO, driver Jeffrey Calicutt, and alleged Local ATO members/officers E.J. Cox, Daniel Kelly, Nicholas Beaver, Zachary Beaver, and John Condon, III. They further argue that existence or non-existence of an agency relationship is a question fact which should be decided by a jury.

National ATO, however, asserts two primary reasons to support its argument that the trial court correctly denied Plaintiffs' motion to amend. First, National ATO relies upon delay. It points out that Plaintiffs' complaint had previously been amended twice and that Plaintiffs did not seek the third amendment until January 5, 2012–ten months after National ATO filed its motion for summary judgment, six days prior to the hearing on National ATO's motion for summary judgment, four and one-half years after Plaintiffs filed their first complaint, and four months prior to the scheduled trial.

Second, National ATO contends that an amendment to allege vicarious liability would be futile. Essentially, National ATO contends that the trial court has already determined that it did not control Local ATO and/or its prospective members, and therefore, that no agency relationship can be found. Additionally, National ATO claims that Plaintiffs have

_____

[8](...continued)
A. Wright et al., Federal Practice and Procedure § 1487, at 613 (2d ed. 1990)).

acknowledged that National ATO did not *formally* appoint Local ATO or any member thereof as its agent, and it argues that Plaintiffs cannot prove the elements of an *apparent* agency–specifically that Plaintiffs relied upon an apparent agency relationship to their detriment.

In light of our finding that National ATO failed to affirmatively demonstrate that it lacked control of Local ATO and/or its members/prospective members or that such control could not be proven at trial, and our resulting reversal of summary judgment, we likewise find that lack of control has not been demonstrated for the purpose of rendering an agency amendment futile. Moreover, Plaintiffs' acknowledgment–that National ATO had not *formally* appointed Local ATO or any Local ATO member to act as its agent–was made only for the purpose of ruling on summary judgment, and therefore, we find that an amendment to allege agency would not be rendered futile based upon such. Finally, we note that the trial court's denial of Plaintiffs' motion to amend was not based upon delay and that National ATO has cited no potential prejudicial effect from allowing the amendment. Accordingly, we decline to find undue delay under the circumstances of this case.

In sum, we conclude that the trial court abused its discretion in finding that Plaintiffs' amendment would be futile, and in denying their motion to amend on this basis. The denial of Plaintiffs' motion to amend is therefore reversed.

## IV. CONCLUSION

For the aforementioned reasons, we reverse the trial court's grant of summary judgment to National ATO as well as its denial of Plaintiffs' motion to amend, and we remand for further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellee, Alpha Tau Omega Fraternity, Inc., for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

-14-