**Sally R. KENNEDY (Morris), Plaintiff-Appellee-Appellant,**

v.

**Henry L. PERRY, Defendant-Appellee, and Metropolitan Government of Nashville and Davidson County, Tennessee, Defendant-Appellant-Appellee.**

Court of Appeals of Tennessee, Middle Section.

Nov. 21, 1984.

Application for Permission to Appeal Denied by Supreme Court March 25, 1985.

David M. Pack, Nashville, for plaintiff-appellee-appellant.

James L. Charles, Nashville, for defendant-appellant-appellee.

## OPINION

LEWIS, Judge.

Plaintiff brought suit pursuant to the Governmental Tort Liability Act, Tenn. Code Ann. § 29–20–101 *et seq.*, against defendants, Henry L. Perry and the Metropolitan Government of Nashville and Davidson County, Tennessee (Metro), seeking damages for injuries to her person and property as the result of an automobile accident.

At the conclusion of a bench trial, the Trial Court found that plaintiff had sustained damages in the amount of $13,-019.55 but that her negligence contributed forty percent to the accident. Judgment was entered in plaintiff's favor for $7,811.73 amounting to sixty percent of the damages sustained.

Thereafter, on motion of defendants, the judgment was amended and entered against Metro only because of defendant Perry's immunity from liability under Tenn.Code Ann. § 29–20–310(b).

The facts out of which this controversy arose are as follows:

At approximately 2:00 A.M. on Friday, February 23, 1980, plaintiff, traveling east in the 2400 block on West End Avenue in Nashville, sought to make a left turn into the Krystal restaurant located on the north side of West End Avenue and collided with a blood-alcohol testing van owned by Metro and driven by defendant Perry in the course and scope of his employment. Perry was traveling west on West End Avenue.

At the point where the accident occurred, West End Avenue is well lighted and consists of seven lanes, three lanes for east bound traffic, three lanes for west bound traffic, and a turn lane in the center.

Plaintiff had taught her classes at the Junior High School in Blytheville, Arkansas, on February 22nd. She left Blytheville at approximately 3:30 or 4:00 P.M. and drove to Nashville, arriving at approximately 8:00 or 8:30 P.M. Upon arriving in Nashville, she met with a friend, Mrs. Smith, at a doughnut shop on West End Avenue. Mrs. Smith left her automobile at the doughnut shop, and she and plaintiff proceeded in plaintiff's automobile to the Ruby Tuesday restaurant on West End Avenue, where they had dinner with wine. After dinner, they drove to the Anchor Motel on West End Avenue where plaintiff had reserved a room. On the way to the motel they stopped and bought beer. Plaintiff and Mrs. Smith spent the remainder of the evening in plaintiff's motel room, talking over old times, drinking beer, and talking to a friend on the telephone.

In the early morning hours, plaintiff drove Mrs. Smith back to the doughnut shop so Mrs. Smith could pick up her automobile. Plaintiff then followed Mrs. Smith to her home to learn where Mrs. Smith lived, since plaintiff was to pick up Mrs. Smith on Saturday, the 23rd.

After learning where Mrs. Smith lived, plaintiff headed back east on West End Avenue toward the Anchor motel. She was traveling in the outside, or curb, lane of traffic when she decided to get something to eat. There was a Steak and Egg restaurant located on the south side of West End Avenue, but it appeared to have a capacity crowd. Plaintiff then decided to go to the Krystal restaurant, one and a half blocks east of the Steak and Egg and located on the north side of West End Avenue, where she could drive through and get a hamburger to take back to her motel room.

Plaintiff testified that she proceeded from the curb lane across the other two east bound lanes and drove into the turn lane where she came to a complete stop. She did not see the white police van driven by defendant Perry until he sounded his horn. When plaintiff heard the horn, the van was also in the turn lane headed directly toward her. The head lights on the van were not on, and when she realized the van was coming directly toward her, she turned from the turning lane into the outer west bound lane, i.e., the west bound lane nearest the turn lane. Plaintiff testified that when she turned her automobile from the turn lane into the outer west bound lane, the front of the van driven by defendant Perry collided with the right side of her automobile.

The photographs of plaintiff's automobile show that the van collided broadside with the right side of plaintiff's Pontiac automobile. No part of the front of plaintiff's automobile collided with the van. The accident occurred totally in the outer west bound lane.

Harold Prince, a witness to the accident, testified on behalf of plaintiff that he was in the turn lane behind plaintiff and that he was able to see the van. In answer to questions from the Trial Judge, Mr. Prince stated that the van was in the outer west bound lane of traffic and not in the turn lane when he saw it. He also testified that the van did not have any lights on and seemed to be traveling between forty and fifty miles per hour.

Defendant Perry admitted that he was traveling forty-two miles per hour but also testified that he did not realize he was in a thirty-mile-per-hour zone. He testified that he did have his head lights on.

It is without question that defendant Perry was traveling at an excessive rate of speed and that under the facts the Trial Judge correctly found that he did not have head lights working on the van. We think it is without question that he was guilty of negligence.

Plaintiff's testimony shows that it would have been necessary for her car to have made a square turn from its stopped position in the turn lane in order for it to have been headed in a northerly direction in the outer west bound lane. This Court knows of no vehicle made for travel over the highways capable of making square turns.

The defendant presents three issues which are as follows:

I Whether the preponderance of the evidence supports the Trial Court's finding that the plaintiff was contributorily negligent?

II Whether the Trial Court, in a non-jury case, may distinguish remote contributory negligence from proximate contributory negligence by selecting the contributory negligence least at fault for the injury to be remote contributory negligence?

III Whether the preponderance of the evidence proves that the plaintiff's contributory negligence was a proximate cause of her injuries?

We discuss these issues together.

In his oral findings at the conclusion of all the evidence, the Trial Court stated:

This is a case where I could not consider the case without trying to determine whether the negligence of [plaintiff] was remote or proximate and the only way that makes sense to me on that is by percentages.

The Supreme Court has never said that the tryer of fact in a nonjury case can use that and if they ever do say so, I wish they would explain what we can use.

So, based upon the unsatisfactory nature of the evidence in this case, the testimony of two people that are saying the van was not only going at an excessive speed, but without lights or with no lights at all, I will assign 60 percent of the fault to the driver of the van [defendant Perry] and 40 percent to [plaintiff].

The order entered by the Trial Court found that plaintiff "was guilty of remote contributory negligence."

We are of the opinion that the record fully supports a finding that the plaintiff was guilty of contributory negligence. We are also of the opinion that the Trial Judge's oral findings that plaintiff's negligence contributed forty percent to the accident is supported by the record. However, we hold that the conclusion reached by the

Trial Judge that plaintiff's negligence was "remote" was error.

 The Trial Judge, in finding that plaintiff was entitled to judgment, compared negligence. This, he cannot do. Remote contributory negligence has to do with causation, not with comparing relative degrees of fault among the parties. *Arnold v. Hayslett*, 655 S.W.2d 941, 946 (Tenn.1983).

The Court, in *Arnold v. Hayslett*, had this to say regarding remote contributory negligence.

"We define it as that negligence which is too far removed as to time or place, or causative force, to be a direct or proximate cause of the accident. We suggest that an appropriate charge would state the foregoing definition and add: 'If you find the plaintiff guilty of such remote contributory negligence, you must reduce the recovery which you would otherwise award, in proportion to plaintiff's contribution to the injury.' "

*Id.* at 945 (quoting *Street v. Calvert*, 541 S.W.2d 576, 585 (Tenn.1976)).

 Under the law as it is presently constituted in the State of Tennessee, it is not permissible for the trier of fact to compare relative degrees of fault among the parties. In other words, comparative negligence is not the law of Tennessee. If comparative negligence is to be adopted in this state, then it must be adopted by either the Supreme Court of Tennessee or the General Assembly of Tennessee. It cannot be adopted by this Court or by the trial courts of this state, either directly or by subterfuge.

Plaintiff, while denying that she is guilty of any degree of negligence, argues that even if she were contributorily negligent, the defendant was guilty of gross negligence.

Tennessee courts have never allowed contributory negligence as a defense to conduct amounting to gross negligence, or to conduct which is culpable regardless of the care exercised by the defendant. Generally, a plaintiff whose ordi-

nary negligence proximately causes the injury cannot recover from an ordinarily negligent defendant. However, ordinary negligence on the part of the plaintiff is not a defense to the gross negligence of the defendant. In general, recovery is not barred whenever the defendant's negligence is of a "higher degree" than that of the plaintiff. The impropriety of the defense is even clearer in cases in which the conduct of the defendant is so wilful that it is no longer based upon negligence. . . .

*Ellithorpe v. Ford Motor Company*, 503 S.W.2d 516, 521–522 (Tenn.1973) (citations omitted).

 Here, defendant Perry admitted that he was driving at a speed of forty-two miles per hour. While the Trial Court found that he did not have his head lights on, he testified that he was of the opinion that he did so. It is uncontroverted that in the 2400 block of West End Avenue the area was well lighted with street lights.

> Gross negligence is not characterized by inadvertence. It is a negligent act done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law.

*Odum v. Haynes*, 494 S.W.2d 795, 807 (Tenn.App.1972) (citations omitted)

Under the circumstances here, we do not believe the record shows that Perry's acts were done with "utter unconcern for the safety of others" or done "with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law."

We are of the opinion that the record in this case supports a finding that the accident was caused not only by the negligence of defendant Perry but also by the proximate contributory negligence of plaintiff in her failure to keep a lookout ahead and in making a left turn in front of the van. The evidence is that the area was well lighted, that the van was white, that plaintiff's witness, who was traveling behind plaintiff, was able to see the van, and that

defendant Perry was able to see the plaintiff's vehicle. The evidence is that if plaintiff had been keeping a proper lookout ahead, she would have seen the van and would not have turned in front of it. Plaintiff was guilty of proximate contributory negligence.

The judgment of the Trial Court is reversed and the cause dismissed. Costs are assessed against plaintiff and the cause remanded to the Trial Court for the collection of costs and any further necessary proceedings.

TODD, P.J., M.S., and CANTRELL, J., concur.