**In re William Dunlap CANNON, III, Debtor.**

**George W. Stevenson, Trustee for William Dunlap Cannon, III, Plaintiff,**

v.

**J.C. Bradford & Company, J.C. Bradford & Co. Futures, Inc. and Charlie Ross, Defendant.**

**Bankruptcy No. 94–21918.**
**Adversary No. 96–0200.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

April 14, 1999.

Michael P. Coury, Saul C. Belz, Quitman R. Ledyard, Memphis, TN, for plaintiff.

Linda Gibbons Willis, Claude O. Ramer II, Nashville, TN, Bobby M. Leatherman,

Carl H. Langschmidt, Jr., Memphis, TN, for defendants.

**MEMORANDUM OPINION AND ORDER AMENDING THE COURT'S "PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: COMPLAINT FOR MONEY DAMAGES AND TO RECOVER FRAUDULENT TRANSFERS— COUNTS I–VII and MEMORANDUM OPINION AND ORDER RE COMPLAINT FOR MONEY DAMAGES AND TO RECOVER FRAUDULENT TRANSFERS— COUNT VIII" ISSUED ON FEBRUARY 22, 1999**

G. HARVEY BOSWELL, Bankruptcy Judge.

On February 22, 1999, the Court issued a document styled "Proposed Findings of Fact and Conclusions of Law re: Complaint for Money Damages and To Recover Fraudulent Transfers—Counts I–VII and Memorandum Opinion and Order re: Complaint for Money Damages and to Recover Fraudulent Transfers—Count VIII." In response to these proposed findings and conclusions, the parties to this adversary proceeding have filed various objections and replies. Such filings include the following:

1. Trustee's Objections to Proposed Findings of Fact & Conclusions of Law Pursuant to Rule 9033 of the Federal Rules of Bankruptcy Procedure;

2. Motion of Defendants to Alter or Amend Judgment Under Rule 9023 and Motion to Amend or Make Additional Findings of Fact Under Rule 7052;

3. J.C. Bradford's Response to Trustee's Objections;

4. Defendants' Motion to Amend Pleadings to Conform to Evidence;

5. Trustee's Objection to Defendants' Motion to Alter or Amend Judgment and Motion to Amend or Make Additional Findings of Fact;

6. Trustee's Objection to Defendants' Motion to Amend Pleadings to Conform to Evidence;

7. Defendants' Objections to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law; and

8. Defendants' Reply to Trustee's Objection to Defendants' Motion to Alter or Amend Judgment.

This Memorandum Opinion and Order will resolve all eight of these matters.

The Court conducted a hearing on these matters on March 30, 1999. FED. R.BANKR.P. 9014. After reviewing the testimony from the hearing and the record as a whole, the Court makes the following amendments to its February 22, 1999, "Proposed Findings of Fact and Conclusions of Law re Complaint for Money Damages and To Recover Fraudulent Transfers—Count I–VII." FED.R.BANKR.P. 7052.

### Defendants, J.C. Bradford & Company and J.C. Bradford Futures, Inc., Were Grossly Negligent

■ Under Tennessee law, gross negligence is defined as "a negligent act done with utter unconcern for the safety of others, or done with such a reckless disregard for the rights of others that a conscious indifference to consequences in implied in law." *See, Kennedy v. Perry*, 688 S.W.2d 74, 78 (Tenn.Ct.App.1984) quoting *Ruff v. Memphis Light, Gas & Water Div.*, 619 S.W.2d 526, 528 (Tenn.Ct.App.1981); *see also, Sumner v. United States*, 794 F.Supp. 1358, 1367 (M.D.Tenn.1992).

■ The proof adduced at trial clearly demonstrates that Bradford acted with such a reckless disregard for the rights of Cannon and Cannon's creditors that a conscious indifference to the consequences that befell Cannon and his creditors arises by implication. (See, *Proposed Findings of Fact and Conclusions of Law*, February 22, 1999, pp. 11–17, 20–21, 38–40, 48–50, 53, 65–66, 74, 79, 82, 111.)

### Churning Losses are the Proper Measure of Damages for Defendants' Churning

■ The CFTC generally awards two types of damages in proven churning cases: (1) commissions and fees charged the customer and (2) the customer's trading losses. *Lehman v. Madda Trading Co.*, [1984–1986 Transfer Binder] Comm. Fut.L.Rep. (CCH) ¶ 22,417, at 29,869–29,871 (CFTC 1984). Absent certain conditions, the first measure of damages is usually applied. *Id.* at 29,869–29,871; however, where churning losses which would not have occurred but for the churning, or where churning has exposed the account to greater risk of market loss than the customer agreed to undertake, recovery of net trading losses, i.e., losses over and above interest, commissions, and other "direct" charges resulting from the churning, is allowed. *See, Hinch v. Commonwealth Fin. Group, Inc.*, 1997 WL 244320, at *7 [1997] Com.Fut.L.Rep. (CCH) ¶ 27,056 (CFTC May 13, 1997).

■ As the record clearly demonstrates, Cannon was fraudulently induced to commence and continue trading with Defendants using a technical trading system which generated excessive day trades and commissions. As a result, Cannon was exposed to significantly higher risk of market loss. Accordingly, under the preponderant weight of the foregoing authorities, the Court awards the Trustee Cannon's net trading losses of $1,046.489, on the Trustee's churning count (Count II), as an alternative award which is subsumed in the Court's award under Counts I and III–VII.

### Trustee's Entitlement to Fees and Expenses Associated with Retaining Expert Witnesses and Consultants

■ The Trustee is entitled to collect from Defendants the fees and costs associated with retaining expert witnesses and consultants for this case. *See, Wood v. Shearson Lehman Hutton, Inc.*, [1992–1994 Transfer Binder] Comm.Fut.L.Rep.

(CCH) ¶ 25,771 at 40,543 (fees and costs); *O'Connell v. Shearson Lehman Hutton, Inc.*, 1993 WL 280771 [1992–1994 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 25,559 at 39,713 (CFTC 1993) (fees only); *Drew v. Shearson Lehman Hutton, Inc.*, 1992 WL 48917, [1990–1992 Transfer Binder] Comm. Fut.L.Rep. (CCH) ¶ 25,248 at 38,738 (CFTC 1992) (fees and costs for experts, plus costs associated with retention of CPA).

The Trustee retained two experts, Ronald Johnson and Dr. Richard Teweles, to advance the Trustee's position in this adversary proceeding. The Court specifically found the reports and testimony of Messrs. Johnson and Teweles to be valuable, credible and persuasive. Accordingly, the Court finds that Defendants are liable for the Trustee's fees and costs associated with the retention of these experts.

### Defendants' Request to Substitute "Bradford & Co., Incorporated" for "J.C. Bradford & Co., J.C. Bradford Futures, and J.C. Bradford Futures, Inc."

■ Defendants, J.C. Bradford & Co, J.C. Bradford Futures, Inc. and Charles Ross (collectively "Defendants"), have moved the Court to amend its Memorandum Opinion respecting Count VIII of the Amended Complaint by substituting "Bradford & Co., Incorporated" for J.C. Bradford & Co., J.C. Bradford Futures, and/or J.C. Bradford Futures, Inc. Defendants have also requested the Court make the same substitution in its Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") with respect to Counts I–VII of the Amended Complaint. Prior to filing its "Motion to Alter or Amend Judgment," the defendants had not affirmatively raised the issue of substitution.

J.C. Bradford & Co., is a Tennessee limited liability company. *See* Answer ¶ 3; Affidavit of R. Patrick Shepherd ("Shepherd Aff."), ¶ 2. Prior to January 1, 1996, J.C. Bradford & Co., was a Tennessee

limited partnership. *See* Answer ¶ 3, Shepherd Aff. ¶ 2. J.C. Bradford & Co was named as a defendant in the Amended Complaint and was adjudged liable both in the Memorandum Opinion (Count VIII) and in the Proposed Findings (Counts I–VII). J.C. Bradford & Co., has a net worth of $168,875,000.

Bradford & Co., Incorporated ("Bradford & Co., Inc." or the "Corporation") is a corporation chartered under the laws of the State of Tennessee. *See* Shepherd Aff. ¶ 3. Bradford and Co., Inc., was incorporated in 1946 under the name "J.C. Bradford & Co., Incorporated," and changed its name to "Bradford & Co., Inc." in 1989. *See* Shepherd Aff. ¶ 3. Bradford & Co., Inc. was not named as a defendant in the Amended Complaint, and therefore was not specifically adjudged liable either in the Memorandum Opinion (Count VIII) or in the Proposed Findings (Counts I–VII). As successor-in-interest to all liabilities of J.C. Bradford Futures, Inc., Bradford & Co., Inc., in nonetheless jointly and severally liable on the judgment contained in the Memorandum Opinion (Count VIII) and potentially liable on the recommendations contained in the Proposed Findings (Counts I–VII).

Bradford & Co., Inc.—the corporation—is a wholly-owned subsidiary of J.C. Bradford & Co.—the LLC. *See* Tr. At 2107, 11.16–21 (Sept. 3, 1998 Testimony of Douglas Kitchen). Under the terms of a shareholders' agreement, J.C. Bradford & Co. controls all the outstanding capital stock of Bradford & Co., Inc. *See* Tr.Ex. 41, June 30, 1997 Combined Financial Statement of J.C. Bradford & Co. and Affiliated Companies, ¶ 1, at 3. Bradford & Co., Inc., has a net worth of only $10,454,000.

J.C. Bradford Futures, Inc., was incorporated in Tennessee in 1983 under the name "Bradford Commodities, Inc.," and changed its name in 1985 to "J.C. Bradford Futures, Inc." Until 1989, J.C. Bradford Futures, Inc. was a wholly owned subsidiary of Bradford & Co., Inc. *See* Shepherd Aff. ¶ 5. In 1989, J.C. Bradford Futures, Inc., merged into its parent Bradford & Co., Inc., and ceased to exist as a separate legal entity. *See* Shepherd Aff. ¶ 5.

The proof in the record demonstrates that J.C. Bradford & Co. is properly included as a liable entity in the February 22, 1999, Memorandum Opinion and Proposed Findings of Fact:

1. All checks drawn from Cannon's escrow accounts which form the basis of the transfers under Count VIII were made payable to "J.C. Bradford" and were deposited into an account styled "J.C. Bradford & Company Customer Segregated Commodity Funds" which is included in the "Cash and Securities Segregated for Regulatory Purposes" entry on the asset-side of the Bradford Financial Statement. *See* Tr.Ex. 10.

2. All checks from any Defendant to Cannon were legended "J.C. Bradford & Co." and were drawn from J.C. Bradford & Co.'s account at the Citizens & Southern National Bank in Dekalb, Georgia. *See* Tr.Ex. 11.

3. When opening his account, Cannon gave "... J.C. Bradford & Co., J.C. Bradford Futures, Inc., and J.C. Bradford & Co., Inc. (jointly and serverally 'Bradford') ..." authority to transfer, liquidate and apply funds in his account. *See* Tr.Ex. 1, at 4.

4. In 1986, J.C. Bradford & Co., not Bradford & Co., Inc., J.C. Bradford & Co., Inc., nor J.C. Bradford Futures, Inc., issued Cannon the Risk Disclosure Statement required under 17 C.F.R. § 1.55. *See* Tr.Ex. 1, at 5.

5. From October 1986 through November 1988, Cannon's account statements were titled "J.C. Bradford Futures, Inc." From December 1988 through January 1989, Cannon's account statements were styled "J.C. Bradford & Company, Incorporated." In February and March 1989, Cannon's account statements read "J.C. Bradford & Co., Courtesy of J.C. Bradford & Co., Incorporated." From April 1989 through February 1992, Can-

non's account statements were titled "J.C. Bradford & Co." From March 1992 through February 1994, Cannon's account statements were captioned "J.C. Bradford & Co., Introduced by Bradford & Co., Incorporated." *See* Tr.Ex. 2.

6. From June 1992 through February 1994, Cannon's trade confirmations were all titled either "J.C. Bradford & Co." or "J.C. Bradford & Co., Introduced by Bradford & Co., Incorporated." *See* Tr. Ex. 4.

7. Trial Exhibit 20, which reflects commissions paid to Charles Ross on Cannon's account, contains references to J.C. Bradford & Co., the LLC, not to Bradford & Co., Inc., the corporation. The inference arises therefrom that Ross was an employee and agent of J.C. Bradford & Co., the LLC, not Bradford & Co., Inc., the corporation. *See* Tr.Ex. 20.

8. J.C. Bradford & Co. received all invoices and issued all checks for procurement of the commodity tick data, from Tick Data, Inc., necessary for Ross an Norman to develop their technical trading system. *See* Tr.Ex. 35.

9. Both the October 1986 and May 1988 promotional letters disseminated by Ross and Norman in order to promote the System to Cannon were printed on stationary bearing the heading "J.C. Bradford & Co." Nowhere in either letter is reference made to "Bradford & Co., Inc.," "J.C. Bradford & Co., Inc.," or "J.C. Bradford Futures, Inc." *See* Tr.Exs. 39 & 40.

10. Trial Exhibit 15 consists of IRS Form 1099B issued on Cannon's account. During 1992 and 1993, these forms were issued by J .C. Bradford & Co. and listed the federal tax identification number of J.C. Bradford & Co., not Bradford & Co., Inc. In 1989, the payor is listed as J.C. Bradford Futures, Inc.; however, J.C. Bradford & Co's federal tax i.d. number is used.

11. Trial Exhibit 14, a CFTC Large Trader Report ("CFTC–40") lists J.C. Bradford & Co., as the firm through whom Cannon carried his account. This relationship was reported as such to the Commodity Futures Trading Commission ("CFTC").

12. When Ross registered with the National Futures Association ("NFA") in March 1986, he identified his employer as J.C. Bradford & Co., both by name and by using J.C. Bradford & Co's NFA identification number.

13. J.C. Bradford & Co., not Bradford & Co., Inc., was the entity whose employees monitored Ross' trading in Cannon's account and which, in those isolated occasions where the losses and commission/equity ratio in Cannon's account were questioned, issued commodity account inquiry forms to Ross. See Tr. Ex. 12. Moreover, all internal reports to Pat Shepherd and Thomas Henricks relating to Cannon's account were made by employees of J.C. Bradford & Co. *See* Tr.Ex. 13.

A cursory examination of the pleadings in this adversary proceeding readily reveals that Defendants have steadfastly treated "J.C. Bradford & Company" and "J.C. Bradford & Co." as the same entity. More significantly, however, neither Defendants collectively, nor Defendant J.C. Bradford & Co., has ever previously asserted as a defense the argument that Defendant J.C. Bradford & Co. has no liability because Cannon's account was with Bradford & Co., Inc., or that J.C. Bradford & Co. was not liable to Cannon by reason of its separate entity from Bradford Futures, Inc., or Bradford & Co., Inc. To the contrary, Defendants have repeatedly acknowledged the Cannon's account was with J.C. Bradford & Co. These acknowledgments, constituting admissions, include, but are not limited to, the following:

1. Defendants' Answer to the Amended Complaint are replete with admissions contrary to the position now adopted. In their *Third Defense,* Defendants alleged:

The Debtor, William Dunlap Cannon, III, knowingly and willingly entered into commodities trading at *J.C. Bradford & Co.* . . .

In their *Eighth Defense*, Defendants alleged:

Some or all of the funds deposited into the commodities account of William Dunlap Cannon, III at *J.C. Bradford & Co.* during the period February 25, 1993, through February 24, 1994, were the property of United Amerian Bank of Memphis, had been earmarked specifically for the payment of checks drawn on account no. 0833916, made payable to the order of *J.C. Bradford & Co* . . .

In paragraph 3 of the Amended Answer of Defendants to Amended Complaint, Defendants defined J.C. Bradford & Co.—the LLC—as "Bradford" and admitted that:

Bradford was a registered futures commission merchant from June 30, 1992, through May 12, 1994. Bradford & Co., Inc., (previously named J.C. Bradford & Co., Inc.), a Tennessee corporation and wholly-owned subsidiary of Bradford, . . .

In response to the Trustee's allegation that 212575 was J.C. Bradford & Co.'s NFA identification number, Defendants made no specific admission or denial. As it turns out, 21275 was assigned to Bradford & Co., Inc., and was formerly assigned to J.C. Bradford & Co., Inc. J.C. Bradford & Co's NFA number is now 267318 and was formerly 1471. The now-defunct J.C. Bradford Futures, Inc., the entity with which Defendants now insist that Cannon maintained his account, was assigned the identification number 179754 by the NFA.

Defendants assert that this pleading inconsistency is conclusive, and that it somehow proves that Bradford & Co., Inc., instead of J.C. Bradford & Co., should be held liable notwithstanding the foregoing proof which demonstrates that Cannon's monthly statements, Form 1099's and risk disclosure came from J.C. Bradford & Co., that all monies flowed between Cannon and J.C. Bradford & Co., that J.C. Brad-

ford & Co. employees supervised Ross' trading of Cannon's account, and that J.C. Bradford & Co. allowed Ross and Norman to sell the system on J.C. Bradford & Co. stationary.

The law is clearly contrary to Defendants' position. First, Defendants were obligated to admit or deny the allegations in paragraph 3 of the Amended Complaint specifically:

When a pleader intends in good faith to deny only a part or a qualification of an averment, the pleader shall specify so much of it as is true and material and shall deny only the remainder. Unless the pleader intends in good faith to controvert all the averments of the preceding pleading, the pleader may make denials as specific denials of designated averments or paragraphs, or he may generally deny all the averments except such designated averments or paragraphs as the pleader specifically admits; but, when the pleader does so intend to controvert all its averments, including averments of the grounds upon which the court's jurisdiction depends, the pleader may do so by general denial subject to the obligations set forth in Rule 11.

Fed.R.Civ.P. 8(b).

When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued in a representative capacity, the party desiring to raise the issue shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

Fed.R.Civ.P. 9(a).

Following their failure to deny material allegations in paragraph 3 of the Amended Complaint, Defendants proceeded to answer all of the remaining allegations in the Amended Complaint with reference only to "Bradford." *See, e.g.,* Am. Answer of Defs. To Am.Compl. ¶¶ 7, 20, 21, 25, 31, 32, 36, 38, 39, 47, 55, 68, 99, & 106 (with exception noted for ¶ 85, where Defendants "deny that Ross and/or J.C. Brad-

ford & Co. breached any duty owed to Cannon.")

Moreover, it is equally apparent that Bradford & Co. is now attempting to assert what is tantamount to an affirmative defense which it failed to assert when its answer was filed. FED.R.BANKR.P. 8(c) imposed upon Bradford & Co. the duty to affirmatively set forth in its answer any "matter constituting an avoidance or affirmative defense." By its motion, Bradford & Co. is asserting a defense of mistaken identity. By its failure to raise such a defense in its answer, the defense is waived.

2. In their Memorandum in Support of Partial Motion to Dismiss, Defendants fail even to mention any affiliated company:

Come now the Defendants, J.C. Bradford & Co. ("Bradford") and Charlie Ross ("Ross"), and file this . . .

3. In the Statement of Undisputed Facts submitted by Defendants in connection with their Motion for Summary Judgment, Defendants admit, *inter alia*, that:

Cannon opened a futures account at *J.C. Bradford & Co.* in October 1986 . . .

4. Finally, in Defendant's Propose Findings of Fact and Conclusions of Law, Defendants themselves specifically suggested that the Court find that ". . . Cannon traded commodities *through J.C. Bradford & Co./J.C. Bradford Futures, Inc. (collectively 'Bradford')* . . . "

The foregoing excerpts from Defendants' own pleadings demonstrate that Defendants never intended to assert the defense of J.C. Bradford & Co., as a separate unrelated legal entity. Now that they are faced with the prospect of a substantial monetary judgment, Defendants disingenuously assert that Bradford & Co., Incorporated, not J.C. Bradford & Co., is the proper defendant and the Court should amend its findings "to avoid confusion in subsequent proceedings." The proof demonstrates that this position is spurious and not taken in good faith. As a result, the defendants are estopped from taking such position as it relates to substituting Bradford & Co., Inc., for J.C. Bradford & Co.

Despite the inability of the Defendants to substitute "Bradford & Co., Inc." for "J.C. Bradford & Co.," their Motion to Alter or Amend will be granted in so far as it relates to substituting "Bradford & Co., Inc." for "J.C. Bradford Futures, Inc." The Court is allowing this amendment due to the fact that J.C. Bradford Futures, Inc. has merged into Bradford & Co., Inc.

### ORDER

It is therefore **ORDERED** that the *Trustee's Objections to Proposed Findings of Fact and Conclusions of Law Pursuant to Rule 9033 of the Federal Rules of Bankruptcy Procedure; Trustee's Objection to Defendants' Motion to Alter or Amend Judgment and Motion to Amend or Make Additional Findings of Fact;* and *Trustee's Objection to Defendants' Motion to Amend Pleadings to Conform to Evidence* are **SUSTAINED.**

It is **FURTHER ORDERED** that the *Motion of Defendants to Alter or Amend Judgment Under Rule 9023 and Motion to Amend or Make Additional Findings of Fact Under Rule 7052* and *Defendant's Motion to Amend Pleadings to Conform to Evidence* is **GRANTED IN PART** and **DENIED IN PART as follows:**

a. **"Bradford & Co., Inc." is hereby substituted for "J.C. Bradford Futures, Inc." in all documents relating to Adversary Proceeding 96–0200.**

b. **Defendant Charles Ross shall be deleted as a party to the Court's judgment with respect to Count VIII of the Trustee's Complaint.**

### –AMENDED–

### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE COMPLAINT FOR MONEY DAMAGES & TO RECOVER FRAUDULENT TRANSFERS—COUNTS I-VII

With respect to Counts I through VII, this Court recommends that the District Court enter Judgment in favor of the Trustee and against the Defendants, joint-

ly and severally, for compensatory damages in the amount of $2,361,736, plus prejudgment interest at 10% since February 10, 1994, and punitive damages in the amount of $5,000,000, or such other amount as the court deems proper to deter Defendants' fraudulent conduct in the future. This Court further recommends that the District Court award the Plaintiff (1) reasonable attorneys' fees and expenses and (2) fees and expenses associated with retaining expert witnesses and consultants.

## –AMENDED–

### ORDER RE COMPLAINT FOR MONEY DAMAGES AND TO RECOVER FRAUDULENT TRANSFERS— COUNT VIII

It is therefore **ORDERED** that the allegation made by the Plaintiff in his complaint with respect to Fraudulent Transfers is **SUSTAINED.**

It is **FURTHER ORDERED** that a judgment against the Defendants, J.C. Bradford & Co., and Bradford & Co., Inc., shall be entered in the amount of $1,137,-500, plus prejudgment interest at 10% since February 10, 1994.

**IT IS SO ORDERED.**